UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SIMONE M. DICKSON,

               Plaintiff,

    -against-                            1:21-CV-0825 (LEK/DJS)

SCHENECTADY POLICE DEPARTMENT, *et al.*,

               Defendants.

---

## MEMORANDUM-DECISION AND ORDER

## I.     INTRODUCTION

      On July 9, 2021, Plaintiff Simone Dickson initiated this action against the City of

Schenectady[1], and three officers employed by the Schenectady Police Department: Andrew

MacDonald, Patrick Verret, and a third officer referred to as "Brenson."[2] See Dkt. Nos. 1

("Complaint"); 1-1 ("Complaint Exhibit"). Plaintiff's claims arise from circumstances

surrounding two interactions she had with police from the Schenectady Police Department, one

involving MacDonald on June 21, 2021, and the other involving Verret and Brenson in 2016.

Compl. at 5–6.

---

[1] The Complaint names the Schenectady Police Department as a defendant. Compl. at 1.
However, the Schenectady Police Department is an agency of the City of Schenectady and not an
independent entity subject to suit, thus the proper party is the City of Schenectady. See Krug v.
Cty. of Rennselaer, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) ("A city police department is not
an independent, suable entity separate from the municipality in which the police department is
organized."); Wilson v. City of N.Y., 800 F. Supp. 1098, 1101 (E.D.N.Y. 1992) (police
department "cannot be sued independently because it is an agency of the City of New York"),
aff'd, 32 F.3d 989 (2nd Cir. 1994).

[2] Defendants assert that there is no Officer Brenson employed by the Schenectady Police
Department, and that they do not know who the "Brenson" designated in Plaintiff's Complaint
refers to. Dkt. No. 17-1 ¶ 2.

Now before the Court is Defendants' Motion to Dismiss. Dkt. Nos. 17 ("Motion"); 17-1 ("Johnson Decl."); 17-2 ("Letter to Plaintiff"); 17-3 ("Defendants' Memorandum"). Plaintiff has responded, Dkt. Nos. 25 ("Response") and 30 ("Supplemental Response"), and Defendants have replied, Dkt. No. 36 ("Reply").

For the reasons set forth below, Defendants' Motion is granted in part and denied in part.

## II.   BACKGROUND

### A.  Factual Background

Plaintiff's Complaint alleges that, on June 21, 2021, she was on State Street in Schenectady, New York, when Defendant MacDonald asked her to move to the right side of the street. Id. at 5. Plaintiff refused his request and proceeded in the direction she had already been walking, "to the left," instead. Id. Plaintiff further alleges that, at this point, MacDonald "struct [sic] [her] throat with force for no reason" and had "hate in his eyes." Id. Plaintiff referred to the strike as a "karate move." Id. Plaintiff proceeded to file a grievance at the police station that same day. Id. In the police grievance, which is attached as an exhibit to the Complaint, Plaintiff states that MacDonald "pushed [Plaintiff] with his arm in [her] neck . . . near choking [her] for no reason." Compl. Ex. at 11.

Plaintiff also attaches to her Complaint a copy of a doctor's visit summary issued by St. Peter's Health Partners relating to a visit made June 21, 2021, with Lindsay Nicole Stokes, MD. Compl. at 8. The visit summary lists as a diagnosis "contusion of throat, sequela" and lists ibuprofen under "Medications Given." Id.  Plaintiff alleges she suffered a "contusion to the neck," has problems breathing, and that the incident "traumatized [her] for life." Id. at 6

The Complaint also details an unrelated incident, ostensibly involving Officers Verret and Brenson, that occurred in 2016 when Schenectady Police Officers allegedly "kicked a door in on [Plaintiff's] stomach while [she] was pregnant." Id.

Plaintiff filed her Complaint on July 9, 2021. See Compl. On August 18, 2021, Plaintiff filed two "return receipts" from two pieces of certified mail, purportedly showing that documents were sent to Officers McDonald, Verret, and Brenson. See Dkt. Nos. 15, 16. The receipts indicate the documents were mailed to the Schenectady Police Department, received on August 5, 2021, and signed for by non-party Amanda Penny. Id.

On September 3, 2021, Defendants filed the present motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure ("F.R.C.P."). See Mot.

### III.   LEGAL STANDARD

In evaluating a motion to dismiss made under Rule 12, a court must accept as true the factual allegations contained in the complaint and draw all inferences in favor of the plaintiff. See Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005) (dealing with motion to dismiss under Rule 12(b)(1)); Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006) (same, dealing with motion to dismiss under Rule 12(b)(6)). "Nonetheless, conclusory allegations are not entitled to the assumption of truth." Francis v. Kings Park Manor, Inc., 992 F.3d 67, 72 (2d Cir. 2021).

Further, when a plaintiff is unrepresented by counsel, it is well established that their submissions "must be construed liberally and interpreted 'to raise the strongest arguments that they suggest'" to protect the pro se litigant from inadvertent forfeiture of important rights due to a lack of legal training. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474–75 (2d Cir. 2006); see also Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) (stating that a court must

"read [a pro se plaintiff's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest").

## IV.   DISCUSSION

Defendants argue that Plaintiff's Complaint should be dismissed (1) pursuant to Rule 12(b)(6) on the grounds that Plaintiff has failed to state a claim regarding any allegations made against the City of Schenectady and regarding the alleged 2016 incident, (2) pursuant to Rule 12(b)(1) on the grounds that the Court does not have subject matter jurisdiction over the action, and (3) pursuant to Rule 12(b)(5) on the grounds that Plaintiff has failed to properly effectuate service upon Defendants. See Defs.' Mem. at 3.

### A.  Rule 12(b)(6) Failure to State a Claim[3]

To defeat a motion to dismiss for failure to state a claim a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. As stated above, a court must accept as true the factual

---

[3] Where a defendant brings a motion to dismiss asserting lack of subject matter jurisdiction under Rule 12(b)(1) as well other grounds, a court should generally consider the 12(b)(1) motion first because "if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." United States ex rel. Kreindler & Kreindler v. United Techs. Corp., 985 F.2d 1148, 1156 (2d Cir. 1993). However, where, as here, the court must determine jurisdiction by asking whether the complaint is drawn so as to seek recovery under federal law, see Section IV(B) infra, a court may "assume or find a sufficient basis for jurisdiction and reserve further scrutiny for an inquiry on the merits." Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1189 (2d Cir. 1996). Because the Court finds that diversity jurisdiction is not present, and thus subject matter jurisdiction may only be exercised pursuant to federal question jurisdiction, the Court makes such an assumption here, and proceeds to analyze Defendants' 12(b)(6) arguments regarding claims made against Verret, Brenson, and the City of Schenectady.

allegations contained in a complaint and draw all inferences in favor of a plaintiff. See Allaire, 433 F.3d at 249–50.

Defendants argue that the Complaint does not contain sufficient factual matter to state a claim against the City of Schenectady or against Officers Verret and Brenson. Defs.' Mem. at 6–8.

### 1. *Monell Claim Against City of Schenectady*

Construed broadly, the only claim the Complaint raises against the City of Schenectady is for liability under the doctrine set forth in Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978). Pursuant to Monell, a local governing body may be sued directly under 42 U.S.C. § 1983 where "a violation of rights resulted from the 'government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" Nagle v. Marron, 663 F.3d 100, 116 (2d Cir. 2011). To state a claim under Monell, a plaintiff must plausibly allege, in addition to a violation of constitutional rights, "(1) the existence of a municipal policy or custom . . . that caused [the] injuries beyond merely employing the misbehaving officer[s]; and (2) a causal connection—an 'affirmative link'—between the policy and the deprivation of [the] constitutional rights." Harper v. City of New York, 424 F. App'x 36, 38 (2d Cir. 2011) (citing Vippolis v. Vill. of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985)) (internal quotation marks omitted). A complaint must plead facts supporting the existence of a municipal policy, and cannot rely on conclusory allegations that a policy exists. See Bishop v. City of N.Y., No. 13-CV-9203, 2016 WL 4484245, at *4 (S.D.N.Y. Aug. 18, 2016) ("[B]oilerplate assertions of municipal policy are insufficient to state a claim for Monell liability.") (collecting cases).

Here, the Complaint does not specifically allege the existence of a policy or custom. <u>See</u> <u>generally</u> Compl. However, it does allege two unrelated incidents, occurring five years apart, where police officers allegedly used excessive force against Plaintiff. <u>See</u> Compl. at 5–6. Even interpreting the Complaint broadly and accepting all factual assertions as true, the allegation of two incidents involving a single person is insufficient to plausibly allege the existence of a municipal policy or custom. <u>See</u> <u>Iacovangelo v. Corr. Med. Care, Inc.</u>, 624 F. App'x 10, 14 (2d Cir. 2015) (affirming dismissal of <u>Monell</u> claim, where the complaint merely alleged two incidents); <u>Rodriguez v. City of N.Y.</u>, 2012 WL 234380, at *4 (S.D.N.Y. Jan. 24, 2012) (dismissing Monell claim where complaint "allege[d] nothing that can be construed as a municipal policy or custom . . . [because it] described only the conduct of individual employees of the City of New York"). Thus, the Court grants Defendants' motion regarding claims against the City of Schenectady.

2.  *Claims Against Verret and Brenson Stemming from the 2016 Incident*

Defendants argue that any 42 U.S.C. § 1983 claims arising from the incident that occurred on August 24, 2016, must be dismissed because they are time-barred. <u>See</u> Defs.' Mem. at 7–8.

It is well settled that Section 1983 claims filed in federal court in New York are subject to New York State's three-year statute of limitations for personal injury actions. <u>See</u> <u>Owens v.</u> <u>Okure</u>, 488 U.S. 235, 251 (1989) (holding that New York's three-year statute of limitations for general personal injury actions is applicable to § 1983 actions filed in federal courts in New York); <u>Helwing v. Pszeniczny</u>, No. 21-CV-0843, 2022 WL 610341, at *2 (2d Cir. Mar. 2, 2022) (upholding dismissal of excessive force and false arrest claims against police officer because "Section 1983 actions filed in New York are . . . subject to a three-year statute of limitations.")

6

(quoting <u>Hogan v. Fischer</u>, 738 F.3d 509, 517 (2d Cir. 2013)). "A § 1983 claim 'accrues when the plaintiff knows or has reason to know of the harm.'" <u>Helwing</u>, 2022 WL 610341 at *2 (quoting <u>Eagleston v. Guido</u>, 41 F.3d 865, 871 (2d Cir. 1994)).

The incident that gave rise to Plaintiff's claims against Verret and Brenson occurred on August 24, 2021. Compl. Ex. at 6. Nearly five years passed between the date of the alleged use of excessive force, when Plaintiff would have known of the harm, and the commencement of this action on July 9, 2021. Further, the Complaint and its supporting paperwork do not contain any allegations that lead to a plausible inference that the statute of limitations should be tolled. <u>See generally</u> Compl. Thus, the Court holds that Plaintiff's claims against Verret and Brenson are time-barred and must be dismissed.[4]

### B. Rule 12(b)(1) Subject Matter Jurisdiction

"It is a fundamental precept that federal courts are courts of limited jurisdiction." <u>Owen Equip. & Erection Co. v. Kroger</u>, 437 U.S. 365, 374 (1978). Article III of the Constitution grants federal courts jurisdiction over suits involving citizens of different states (referred to as diversity jurisdiction) and cases "arising under the Constitution, laws, or treaties of the United States" (referred to as federal question jurisdiction). <u>See</u> U.S. Const. art. III, § 2; 28 U.S.C. §§ 1331, 1332; <u>see also</u> <u>Bartlett v. Honeywell Int'l, Inc.</u>, 737 F. App'x 543, 546–47 (2d Cir. 2018) (same).

A plaintiff bears the burden of proving that subject-matter jurisdiction exists by a preponderance of the evidence. <u>Makarova v. U.S.</u>, 201 F.3d 110, 113 (2d Cir. 2000).

*1. Diversity Jurisdiction*

---

[4] To the extent the Complaint could be interpreted to raise claims under state law for battery and assault against Verret and Brenson, over which the Court could potentially exercise supplemental jurisdiction, the Court notes that the statute of limitations for these claims is only one year and has likewise expired. <u>See</u> New York Civil Practice Law and Rules § 215(3).

Diversity jurisdiction exists only where there is complete diversity between the parties, in other words, when "all plaintiffs . . . [are] citizens of states diverse from those of all defendants." Logan v. Town of Windsor, 833 F. App'x 919, 920 (2d Cir. 2021) (quoting Pa. Pub. Sch. Emps.' Retirement Sys. v. Morgan Stanley & Co., 772 F.3d 111, 118 (2d Cir. 2014)). Defendants are correct that complete diversity is not present here and thus the Court does not have diversity jurisdiction over this matter. The Complaint specifies that Plaintiff resides in Albany, New York. See Compl. at 3, and that each of the Defendants each also reside in New York. Id. at 3–4.

### 2. Federal Question Jurisdiction

"Under the longstanding well-pleaded complaint rule, . . . a suit 'arises under' federal law . . . only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law]." Wright v. Musanti, 887 F.3d 577, 584 (2d Cir. 2018) (quoting Vaden v. Discover Bank, 556 U.S. 49, 60 (2009)).

Defendants argue that the Court does not have federal question jurisdiction because the Complaint "does not specify any federal statute." Defs.' Mem. at 5. However, because of the special consideration due pro se litigants, a court is obligated to interpret a complaint to raise arguments that confer subject matter jurisdiction to the extent they are "suggested" by the complaint, even if they are not explicitly articulated by the plaintiff. See Triestman, 470 F.3d at 475–76 (overturning 12(b)(1) dismissal where assertions in complaint "suggest[ed]" claims over which the court properly had jurisdiction, and the fact plaintiff did not articulate the theories himself was "of no moment" because "it was the obligation of the district court below to interpret [the pro se plaintiff's] complaint to raise the strongest arguments that they suggest." (quotation marks omitted)).

The question then becomes whether the assertions in Plaintiff's Complaint suggests claims over which the Court may properly exercise subject matter jurisdiction. The Court finds that they do.

Plaintiff's Complaint alleges that, on June 21, 2021, she was physically assaulted while walking down the street by an officer employed by the Schenectady Police Department. See Compl. at 5. While Defendants argue this would merely constitute "common assault," such allegations may properly state a claim for excessive force in violation of the Fourth or Fourteenth Amendments and may be remediable under 42 U.S.C. § 1983.

### a.   Excessive Force Analysis

To state a claim for excessive force a plaintiff must allege facts that meet different standards depending on whether the force was used in the context of an arrest or not. If the alleged force was used by an officer during an arrest or seizure, the Fourth Amendment is implicated, and a plaintiff must allege facts sufficient to plausibly infer that the force was "objectively unreasonable 'in light of the facts and circumstances confronting [the officer], without regard to their underlying intent or motivation.'" Biswas v. City of N.Y., 973 F. Supp. 2d 504, 529 (S.D.N.Y. 2013) (quoting Maxwell v. City of New York, 380 F.3d 106, 108 (2d Cir. 2004)). However, where excessive force is not related to an arrest or seizure, a plaintiff must meet the standard set by the Fourteenth Amendment. Morgan v. Cty. of Nassau, 720 F. Supp. 2d 229, 237 (E.D.N.Y. 2010) ("Generally, the Second Circuit has held that courts should analyze an excessive force claim related to an arrest or seizure under the Fourth Amendment, and analyze all other excessive force claims under the Fourteenth Amendment.") (citing Hemphill v. Schott, 141 F.3d 412, 418 (2d Cir. 1998)). The Fourteenth Amendment standard requires that the government official's action "shock the conscience" and is generally considered to be more

stringent than the Fourth Amendment standard. Id. ("[A] Fourteenth Amendment claim relies on a more stringent 'shocks the conscience' test."); See also Dancy v. McGinley, 843 F.3d 93, 117 (2d Cir. 2016) (observing that "[U]nlike § 1983 claims under the Due Process Clause, . . . Fourth Amendment claims are tied to reasonableness, which is considerably less demanding").

The Court need not determine if the alleged force used by MacDonald was employed in relation to an arrest or seizure because Plaintiff has alleged facts that could plausibly support an excessive force claim even under the higher Fourteenth Amendment standard. See Morgan, 720 F. Supp. 2d at 238 ("At present, the Court need not resolve which test to apply, because the Court is satisfied that the plaintiff has alleged facts that could plausibly support an excessive force claim under the more stringent 'shocks the conscience' test").

The Supreme Court and Second Circuit have recently refined the analysis of whether an official's use of force "shocks the conscience" and violates the Fourteenth Amendment. See Edrei v. Maguire, 892 F.3d 525, 537–38 (2d Cir. 2018) (stating that recent Supreme Court precedent "is best read as elaborating on [the shocks the conscience] standard, not abandoning it." (citing Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015))). Pursuant to this refinement, the Fourteenth Amendment requires a two-part inquiry. First, the official's use of force must be undertaken "purposefully, knowingly, or (perhaps) recklessly" as opposed to negligently or accidentally. Id. at 534 (citing Kingsley, 135 S. Ct. at 2472). Second, the force used must be "objectively unreasonable," and a plaintiff is not required to show that the force was subjectively malicious or meant to cause harm. See id. at 534 ("[T]he objective standard [Kingsley] announced confirms that the subjective mental state . . . is not a necessary showing.").

In determining if force is "objectively unreasonable" sufficient to meet the second prong

of the Fourteenth Amendment excessive force standard, courts may look to four non-exhaustive

factors:

> (1) the need for force, including the threat reasonably perceived by
> the officer and whether the plaintiff was actively resisting, (2) the
> relationship between the need and the degree of force used, (3) the
> extent of the plaintiff's injury, and (4) any effort made by the officer
> to temper or to limit the amount of force.

Abujayyab v. City of New York, No. 15-CV-1008, 2018 WL 3978122, at *6 (S.D.N.Y. Aug. 20,

2018) (citing Kingsley, 135 S. Ct. at 2473 and Edrei, 892 F.3d at 537–38). Further, while it is not

required that force be applied maliciously, the existence of malice may indicate that the force

used was excessive, Edrei, 892 F.3d at 537, and the Fourteenth Amendment standard is "most

readily satisfied when conduct is 'intended to injure in some way unjustifiable by any

government interest,'" id. at 533 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 849

(1998)).

The Complaint, liberally construed, alleges that Plaintiff was walking in a public area

when confronted by MacDonald. Compl. at 5. When Plaintiff continued to walk in the direction

she was already heading, rather than heeding MacDonald's instruction to move to the right side

of the street, it is alleged that MacDonald struck Plaintiff in the throat with sufficient force to

cause a contusion and persistent breathing difficulties. Id. at 5–6.

If all material factual allegations are taken to be true and all inferences are made in

Plaintiff's favor, these allegations are sufficient to state a claim for excessive force under the

Fourteenth Amendment.

Regarding the first prong of the Fourteenth Amendment analysis, it could reasonably be

inferred from the Complaint that MacDonald struck Plaintiff purposefully or knowingly given

the circumstances of the strike and Plaintiff's account that MacDonald was looking at her as he did it. See Compl. at 5 (stating that during the alleged assault "the hate in his eyes I will never forget").

Regarding the second prong, the facts as alleged in the Complain do not give any indication that Plaintiff posed a threat to MacDonald and there was no need to strike an individual merely walking down the street.[5] Indeed, the disparity between the alleged force used and the need is stark. While Plaintiff's injuries were not life threatening, it could be inferred that they were somewhat severe given the alleged persistent symptoms. Cf. Robison v. Via, 821 F.2d 913, 924 (2d. Cir. 1987) ("If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe."). Further, it does not appear from the Complaint that MacDonald made any effort to temper his use of force. Finally, MacDonald's alleged actions could plausibly be viewed as unjustifiably and maliciously intended to cause injury, and thus conscience-shocking. See Morgan v. Cty. of Nassau, 720 F. Supp. 2d 229, 237 (E.D.N.Y. 2010) ("[Defendant's] alleged actions could plausibly be viewed as unjustifiably intended to injure Morgan, and thus conscience-shocking.").

Thus, the Court finds that the Complaint plausibly alleges facts that give rise to a claim for excessive force under the Fourth and Fourteenth Amendments, remediable under 42 U.S.C. §

---

[5] Defendants assert that Plaintiff was walking down the middle of State Street, "one of the busiest streets in the City of Schenectady," carrying a sign, and thus posed a safety hazard. See Defs.' Mem. at 2. Further, Defendants argue MacDonald did not actually use any level of force against Plaintiff, but merely instructed that she needed to walk on the sidewalk. Id. While the need to protect Plaintiff or others from a hazard could potentially justify the use of some level of physical contact, the resolution of competing factual narratives is not proper at this stage of litigation. See Allaire, 433 F.3d at 249-50 ("We review de novo the grant of a motion to dismiss under Rule 12(b)(6), accepting as true the factual allegations in the complaint and drawing all inferences in the plaintiff's favor.").

1983, and the Court therefore has federal question jurisdiction over Plaintiff's claims against
MacDonald.

### A.  Rule 12(b)(5) Insufficient Service

Once a defendant makes a Rule 12(b)(5)[6] motion to dismiss for insufficient service of
process, "the plaintiff bears the burden of establishing that service was sufficient." Khan v.
Khan, 360 Fed App'x. 202, 203 (2d Cir. 2010). To determine if the plaintiff has met that burden,
a court "may look beyond the pleadings, including to affidavits and supporting materials." Ozuzu
v. Greenpoint Mortg. Funding, No. 19-CV-03783, 2020 WL 5658776, at *7 (E.D.N.Y. Sept. 23,
2020).

The Federal Rules of Civil Procedure require a plaintiff to serve a summons and
complaint on an individual[7] in one of the manners prescribed in Rule 4(e) within 90 days after
the complaint is filed. F.R.C.P. 4(c), (e), and (m). Rule 4(e) in turn allows for service under the
laws of the state wherein the district court is located or where service is made. Because this court
sits in New York, and service was allegedly effected in New York, additional appropriate

---

[6] While Defendants move to dismiss under both 12(b)(5) (insufficient service of process) and
Rule 12(b)(2) (lack of personal jurisdiction), their motion argues only that the method of service
of process was insufficient. See Defs.' Mem. at 5–6. Because the proper method for challenging
the mode of delivery of a summons and complaint is via a Rule 12(b)(5) motion, the Court will
treat the motion as seeking dismissal under Rule 12(b)(5) only. See Koulkina v. City of New
York, 559 F. Supp. 2d 300, 310 n.9 (S.D.N.Y. 2008) (treating similar motion as one brought only
under Rule 12(b)(5) because "[m]otions challenging the sufficiency of service of process are
properly made under Rule 12(b)(5), not Rule 12(b)(2)" (collecting cases); see also Hubert v.
Dep't of Corr., No. 21-CV-0094, 2022 WL 657622, at *3 (D. Conn. Mar. 4, 2022) (treating
similar motion as one made only under Rule 12(b)(5) where it "include[d] arguments based only
on insufficient process"); Madej v. Yale Univ., No. 20-CV-0991, 2021 WL 6497218, at *2 n.2
(D. Conn. Jan. 20, 2021) (same); Charles A. Wright & Arthur Miller, 5B Federal Practice &
Procedure § 1353, at 334 (3d ed. 2004) ("A Rule 12(b)(5) motion is the proper vehicle for
challenging the mode of delivery or the lack of delivery of the summons and complaint.").

[7] Because the Court has dismissed all claims against the City of Schenectady, it need not address
service on a local government.

methods of service under state law are set forth in New York Civil Practice Law and Rules ("C.P.L.R.") § 308.

Defendants argue that Plaintiff's service upon them does not meet the requirements of either Rule 4 or C.P.L.R. § 308. See Defs.' Mem. at 5.

Plaintiff has not submitted any affidavit of service or other proof that Defendants were properly served. See Dkt. There is likewise no evidence that Plaintiff requested that Defendants waive service as provided for in Rule 4(d). The only evidence on the record tending to show that Defendants received the summons and Complaint are four United States Postal Service return receipts, indicating that mailings were sent via certified mail to the Schenectady Police Department in Schenectady, New York, addressed respectively to Officers MacDonald, Verrett, and Brenson, as well as Chief Clifford, and received August 5, 2021. See Dkt. Nos. 15, 16 ("Return Receipts").

None of the methods set forth in Rule 4 or C.P.L.R. § 308 allow for service to be performed merely by mailing documents to a defendant's place of work. Pruthi v. Empire City Casino, 2022 WL 596370, at *4 (S.D.N.Y. Feb. 28, 2022) (finding service insufficient under both federal and New York law where plaintiff mailed summons and complaint via certified mail). Thus, the Court finds Plaintiff has not yet properly served any of the Defendants.

However, the fact that Plaintiff did not serve Defendants within the 90-day time period set forth in Rule 4(m) does not necessarily require dismissal. Rule 4(m) states that, if a Plaintiff fails to serve the complaint within the 90-day time period, a court may either "dismiss the action without prejudice . . . *or* order that service be made within a specified time." (emphasis added). If a plaintiff shows good cause for their failure to serve within the allotted time, an extension of time is mandatory. See Rule 4(m) ("[I]f the plaintiff shows good cause for the failure, the court

14

must extend the time for service for an appropriate period."); see also Zapata v. City of N.Y., 502

F.3d 192, 197 (2d Cir. 2007) ("It is clear under the second clause of Rule 4(m) that an extension

is always warranted upon a showing of 'good cause,' because the rule commands that an

'appropriate' extension 'shall' be granted upon such a showing."). However, even absent good

cause, a court maintains discretion to grant an extension of time to effect service of process.

Zapata, 502 F.3d at 196 ("We hold that district courts have discretion to grant extensions [under

Rule 4(m)] even in the absence of good cause").

Plaintiff has not shown any explanation or good cause for failing to serve process within

the 90-day window. Thus, the Court must determine whether it should exercise its discretion to

extend the time for service. In making this determination, the Court must consider the following

factors:

> (1) whether the applicable statute of limitations would bar the refiled action; (2)
> whether the defendant had actual notice of the claims asserted in the complaint;
> (3) whether the defendant had attempted to conceal the defect in service; and (4)
> whether the defendant would be prejudiced by the granting of plaintiff's request
> for relief from the provision.

Soos v. Niagara Cty., 195 F. Supp. 3d 458, 467 (W.D.N.Y. 2016); Ebanks v. Ebanks, 2007 WL

2591196 at *4 (S.D.N.Y. July 27, 2007).

The first factor does not favor granting an extension under Rule 4(m). No applicable

statute of limitations would bar a refiled action should the Court order dismissal. The incident in

question occurred in July of 2021, less than one year ago, and, as stated above, the statute of

limitations concerning Section 1983 claims is three years in the state of New York. See Owens,

488 U.S. at 251. Should Plaintiff also choose to pursue state law claims for battery or assault,

such actions must be brought within one year, C.P.L.R. § 215(3), and Plaintiff would still have

time to refile her complaint and properly serve Defendants.

The second factor favors Plaintiff. It is apparent that Defendants had actual notice of the claims in the Complaint, given that they appeared in this matter on September 3, 2021, and wrote a letter to Plaintiff referencing the Complaint and Plaintiff's attempted service. Johnson Decl. ¶ 7, Ex. A. See Von Britton v. Connecticut, No. 14-CV-00133, 2016 WL 308774, at *6 (D. Conn. Jan. 25, 2016) (finding the second factor favored plaintiff where defendants had filed an appearance in the action).

The third factor favors Defendants. They did not attempt to conceal the defect in service, but instead contacted Plaintiff by letter on August 24, 2021, to advise her that they did not believe service had been properly executed. See Johnson Decl. Ex. A.

The fourth factor favors the grant of an extension. While Defendant may experience some prejudice from having to defend an action after the original service period has passed, if any such prejudice exists it is slight given that the failure to properly serve has only delayed the case for a matter of months. See Hubert, 2022 WL 657622 at *5 (D. Conn. Mar. 4, 2022) (finding prejudice due to extension "slight" where failure to properly serve delayed case for less than a year); John v. City of Bridgeport, 309 F.R.D. 149, 156 (D. Conn. 2015) (finding prejudice due to extension slight where "[p]laintiff's failure to timely serve defendants delayed the case for less than two months, not for years"); Klinker v. Furdiga, No. 12-CV-254, 2013 WL 1705106, at *4 n.5 (D. Vt. Apr. 19, 2013) (finding delay insufficient to show prejudice because "the case was only a couple months older than it would have been if [the] plaintiff hadn't been given this extension" (internal quotation marks omitted)).

In weighing the above factors, the court is cognizant of "the strong federal policy in favor of resolving claims on the merits." Hubert, 2022 WL 657622 at *5 (citing John, 309 F.R.D. at 156); see also Mason Tenders Dist. Counsel Pension Fund v. Messera, No. 95-CV-9341, 1997

WL 221200, at *5 (S.D.N.Y. Apr. 1, 1997) ("The Second Circuit has clearly expressed its preference that litigation disputes be resolved on the merits."). Thus, the Court finds that an extension of time for service should be granted in this case and denies Defendants' motion to dismiss under Rule 12(b)(5).

## V.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion (Dkt. No. 17) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED**, that Defendants' motion to dismiss pursuant to F.R.C.P. 12(b)(6) for failure to state a claim against Defendants Verret, Brenson, and the Schenectady Police Department/City of Schenectady is hereby **GRANTED**; and it is further

**ORDERED**, that Defendants Verret, Brenson, and the Schenectady Police Department/City of Schenectady are hereby **DISMISSED** from this action; and it is further

**ORDERED**, that Defendants' motion to dismiss pursuant to F.R.C.P. 12(b)(1), 12(b)(2), and 12(b)(5) is **DENIED**; and it is further

**ORDERED**, that Plaintiff is granted an extension of time until May 16, 2022, to effectuate service of her Complaint and summons on Defendant MacDonald; on or before that date, Plaintiff must serve Defendant in a manner set forth in Federal Rule of Civil Procedure 4(e) or in New York C.P.L.R. § 308; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      April 12, 2022
            Albany, New York

LAWRENCE E. KAHN
United States District Judge